The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner John A. Hedrick, and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representative, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. On the date of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. A set of plaintiff's medical records consisting of thirteen pages are admitted into evidence.
* * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 34 years old, with a date of birth of 4 November 1961. For his education, he had completed high school and 160 semester hours of training in marketing, communication, and administration. He had spent ten years in the military. His work experience included working as a limousine driver, a consultant, and a bodyguard. On 15 May 1996, plaintiff began employment with the employer in a job manning the front desk at its hotel. His duties included taking reservations, checking in guests and carrying luggage for some guests.
2. While in the military, plaintiff had injured his left knee and had received compensation for a 10% disability. Following this injury in the military, he underwent one year of rehabilitation.
3. On 5 July 1996, less than two months after starting employment with employer, plaintiff was programming wake-up calls at the front desk when a co-worker, Charlotte (Charlie) Johnson, opened a drawer in a nearby cabinet and plaintiff bumped his left knee on the drawer. Ms. Johnson and other co-workers laughed when they saw the incident. After the incident, plaintiff limped while walking to the kitchen.
4. Later that night plaintiff went to the emergency room at Alamance Regional Medical Center. At the emergency room there was no obvious swelling or discoloration, and the knee joint was stable. The doctor diagnosed a knee contusion. Plaintiff was given instructions to place ice on his knee, to keep the knee elevated, to take Tylenol, to use a knee immobilizer, and to limit use of his knee. Plaintiff was told to contact Dr. J. Thomas Hodges for a recheck in one week.
5. Also at the emergency room, plaintiff was given a written excuse to be out of work for seven days, but could return to work in three or four days if light duty was available. Plaintiff was told not to work if he was taking Hydrocodine, but it is unclear what limitations would be placed on his activities as a result of taking this medication. Under the section of the excuse which listed specific restrictions (such as operating machinery, lifting weight, continuous activity, and use of the arms) no specific restrictions were given for plaintiff's return to work activity.
6. X-rays were ordered in the emergency room. At the time the x-rays were taken, there was no fracture, dislocation or acute bony abnormality. The knee joint was well maintained, and the patella was normal.
7. After the emergency room, plaintiff did not return to work for employer and did not bring the medical excuse to the employer. At all times since 5 July 1995 defendant has had light duty positions available. During second shift a job has been available taking reservations. During second and third shifts, jobs have been available at the front desk which can be performed by sitting between guests arrival and sitting on a stool while checking in guests.
8. Plaintiff was examined by Dr. Hodges on 18 July 1995, about two weeks after the incident. At this time plaintiff was wearing a knee immobilizer, and his knee was quite swollen. Dr. Hodges recommended that plaintiff use the knee immobilizer and crutches, and Dr. Hodges prescribed Ultram. Plaintiff was instructed to continue his "limited activity." Dr. Hodges did not give an excuse for plaintiff to be out of work, did not give any physical restrictions on his return to work, and did not instruct plaintiff not to drive a car. Plaintiff was told to return to the clinic in five to seven days or on an as-needed basis.
9. Plaintiff failed to keep his appointments on 24 July and 15 August 1995. Plaintiff testified that he did not keep these appointments because he could not drive a car and could not find a friend to drive him. The medical records do not indicate that plaintiff contacted Dr. Hodges' office to cancel these appointments and do not provide any reason that the appointments were not kept.
10. Plaintiff returned to Dr. Hodges on 29 August 1995. At this time there was a "little puffiness" over the patella; however, there was no tenderness along the joint line and the knee was stable. Dr. Hodges did not give plaintiff an excuse to be out of work, did not place any restrictions on plaintiff's physical activity and did not instruct plaintiff not to drive a car. Plaintiff was told to return to the clinic in two weeks or on an as-needed basis.
11. Plaintiff did not keep his appointment for 22 September 1995, under the same circumstances as his failure to keep the appointments of 24 July and 15 August 1995.
12. Plaintiff returned to Dr. Hodges on 5 October 1995. At this time there was still some "puffiness" and plaintiff complained that his knee bothered him intermittently. Plaintiff told Dr. Hodges that he may be able to look for work, but doubted if he could find any employment in the area. Plaintiff did not explain what he meant by "unable to find any employment in the area" and did not indicate that the reason for this failure was because of any physical impairment. Dr. Hodges did not give plaintiff an excuse to be out of work, did not place any restrictions on his physical activities, and did not inform plaintiff not to drive a car. Plaintiff was told to return to the clinic in two or three weeks or on an as-needed basis.
13. On 6 October 1995, plaintiff returned to Dr. Hodges in order to obtain his medical records, and on 12 October 1995 plaintiff canceled his appointment.
14. Plaintiff returned to Dr. Hodges on 10 November 1995, and Dr. Hodges found the knee to be considerably better. Dr. Hodges was of the opinion that plaintiff may be able to return to school in order to obtain a pilot's license. Dr. Hodges did not give plaintiff an excuse to be out of work, did not place any restrictions on his physical activity, and did not tell plaintiff not to drive a car. Plaintiff was told to return to the clinic in four or five weeks or on an as-needed basis.
15. Plaintiff testified that he returned to Dr. Hodges on 28 December 1995, and asked Dr. Hodges for a permanent partial disability rating. Plaintiff further testified that Dr. Hodges did not give him a permanent partial disability rating.
16. Plaintiff swore out a criminal complaint against Ms. Johnson for assault. The trial of the case was on 29 December 1995, and Ms. Johnson was found not guilty.
17. Plaintiff filed a complaint with the Equal Employment Opportunities Commission alleging that he was sexually harassed by Ms. Johnson, who had been his supervisor. The complaint was dismissed. Plaintiff testified that he intends to file "a number" of lawsuits against Ms. Johnson and the employer.
18. Plaintiff has applied for disability compensation through Social Security Administration. Plaintiff testified that in support of this claim he underwent a physical examination in July 1996.
19. On 5 July 1995 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. As a result of this injury by accident, plaintiff was unable to be gainfully employed for four days. From 10 July 1995 and continuing plaintiff has been capable of returning to work at his regular job with employer, with the minor accommodation to provide a stool to sit at the front desk while checking in guests. This job has been continuously available since the injury by accident, although plaintiff has not made a request to return to his former job and has represented that he is unable to be gainfully employed.
20. As a result of the injury by accident plaintiff required medical treatment. The medical treatment provided at Alamance Regional Medical Center on 5 July 1995 and the treatment provided by Dr. Hodges from 18 July 1995 through 10 November 1995 was reasonably necessary to effect a cure, to provide relief or to lessen any period of disability.
21. As a result of the accident of 5 July 1995, plaintiff did not sustain any permanent partial impairment to the use of his left leg.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 5 July 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer when he bumped his left knee on a drawer. N.C.G.S. 97-2(6).
2. As a result of his injury by accident, plaintiff was unable to be gainfully employed for four days. Because his inability to be gainfully employed was less than seven days, he is not entitled to any temporary total disability compensation. N.C.G.S. 97-28.
3. As a result of the injury by accident of 5 July 1995, plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of said accident. The treatment provided at Alamance Regional Medical Center of 5 July 1995 and by Dr. Hodges from 18 July 1995 through 10 November 1995, was incurred as a result of the injury by accident and was reasonably necessary in order to effect a cure, provide relief or reduce any period of disability. For any medical treatment received after 10 November 1995, plaintiff has failed to prove that such treatment was made necessary by the injury by accident; and therefore, plaintiff is not entitled to additional medical treatment until such time as he comes forward with substantial and credible evidence that said medical treatment was made necessary as a result of the injury by accident of 5 July 1995. N.C.G.S.97-25.1.
4. As a result of the injury by accident, plaintiff is not entitled to any permanent partial disability compensation. N.C.G.S. 97-31.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiff's claim for temporary total disability and permanent partial disability compensation must be, and the same is hereby, DENIED.
2. Defendants shall pay all medical expenses incurred, or to be incurred, as a result of the injury by accident of 5 July 1995. Said medical treatment shall include treatment provided at Alamance Regional Medical Center of 5 July 1995 and by Dr. Hodges from 18 July 1995 through 10 November 1995. Defendants shall not be responsible for any future medical compensation until such time as plaintiff comes forward with substantial and credible evidence that said medical treatment was made necessary as a result of the injury by accident of 5 July 1995.
3. Defendants shall pay all costs.
This the _____ day of August, 1997.
 S/ _________________________ THERESA B. STEPHENSON DEPUTY COMMISSIONER
CONCURRING:
S/ _______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ________________________ W. BAIN JONES, JR. DEPUTY COMMISSIONER